# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Trustees of the Chicago Plastering Institute Pension Trust, *et al*., | |
| Plaintiffs, | Case No. 04-cv-7820 |
| v. | Judge Gottschall |
| Solarcrete Energy Efficient Building Systems Inc. | |
| Defendant. | |

## PLAINTIFFS' MOTION FOR ENTRY OF JUDGMENT

Pursuant to this Court's Memorandum Opinion and Order entered September 17, 2009 ("Opinion"), Plaintiffs move this court for entry of judgment in their favor and against Defendant in the total amount of **$478,809.98**, plus their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(2).[1] As set forth below, this figure consists of the delinquent contributions and dues owed for hours identified by Plaintiffs' auditors on the Summary of Amounts Due Based on Time Cards Only (the "Original Time Card Report") comprising Plaintiffs'' Trial Exhibit ("PTX") 23, with the adjustments ordered by the Court in the Opinion; 20% liquidated damages to the non-ERISA funds; interest to all funds and "double interest" to the ERISA funds, updated through November 30, 2009; pre-judgment interest to the Union on its claim for dues; and Plaintiffs' reasonable audit costs. These final amounts (with the exception of pre-judgment interest on dues) are set forth in the Revised Time Card Report attached as Exhibit 3.

---

[1] Plaintiffs will submit their bill of costs and petition for their attorneys' fees following the entry of judgment according to the schedules set forth in the applicable local rules of the District Court, unless this Court orders otherwise.

1. **Changes to the Time Card Report**

At the final day of trial, Plaintiffs' auditors, Piotrowski & Gebis ("P&G"), presented an analysis (the "Original Time Card Report") of the time cards disclosed by Defendant on the first day of trial and eventually tendered to the Plaintiffs, which analysis found that, based on the hours shown on the time cards as having been worked in what were deemed plastering work but not reported to the Funds, Defendant owed Plaintiffs a total principal amount of $132,929.82 in delinquent contributions and working assessments. (PTX 23 at 3.) Then-current interest, liquidated damages, and audit fees brought the total owed to $344,103.36. (PTX 23 at 3.)

In its Opinion, the Court found Defendant liable for delinquent contributions to the Funds and dues to the Union for all covered work performed during the period May 1, 1997, through November 30, 2004, (the "Audit Period"). (Opinion at 13-15.) The Court ordered Plaintiffs to use the Original Time Card Report as the measure of damages. (Opinion at 15.) However, the Court held that Defendant owed contributions and dues only on those hours identified by employees on the time cards as "shotcrete" and "finish coat," as well as for forty-five percent of the hours that employees did not clearly identify on their time cards as having been spent in a particular task (characterized as "unknown hours" on the Original Time Card Report), so long as "there is some basis for supporting that the worker in question did wall installation work." (Opinion at 16-17.)

After carefully reviewing the Opinion P&G has produced a new, revised report (the "Revised Time Card Report") that incorporates all revisions ordered by the Court. (See Exh. 1 – Declaration of John Stoeckert, at ¶ 3-4; Exh. 2 – Declaration of Gary Gebis at ¶ 2-4; Exh. 3 – Revised Time Card Report.) The Revised Time Card Report accurately reflects

all of the damages awarded by the Court in its Memorandum Opinion and Order. (Exh. 1 – Stockert Decl. at ¶ 4-5; Exh. 2 – Gebis Decl. at ¶ 4-5.) The following sets forth all of the ways in which the Revised Time Card Report differs from PTX 23, the Original Time Card Report:

a. Certain misclassifications of time cards that P&G discovered in the Original Time Card Report during its review of the time cards have been remedied. These include both time cards that showed plastering hours that were not originally included and time cards that showed non-plastering hours that were originally misclassified as plastering hours, as well as time cards that had previously been classified as showing "non-plastering" hours but that were sufficiently ambiguous that they should have been classified as "unknown" hours. (Exh. 1 – Stoeckert Decl. at ¶ 6-8; Exh. 2 – Gebis Decl. at ¶ 6(a); Exhs. 4 and 5 – Time Cards.)

b. All additional reportable hours computed on the basis of hours indicated on time cards as "wall erection" or "wall prep" have been removed. (Hours indicated on time cards in all other categories, aside from "shotcrete" and "finish coat," were not included in the Original Time Card Report, but rather excluded as "non-plastering hours"). (Exh. 1 – Stoeckert Decl. at ¶ 9-10; Exh. 2 – Gebis Decl. at ¶ 6(b).)

c. Additional reportable hours have been included representing forty-five percent of the "Unknown Hours" shown on the time cards—that is, forty-five percent of the hours that could not be classified as either plastering or non-plastering

3

hours due to insufficient or ambiguous information on the time cards—but only for employees falling into at least one of the following categories:

    i. all employees for whom Solarcrete had submitted at least one time card on which shotcrete or finish coat hours were indicated;

    ii. all employees for whom Solarcrete has ever reported hours or paid contributions to the Funds; or

    iii. all employees not falling into the prior two groups but for whom the Funds have received contributions from another employer signatory to a collective-bargaining agreement with the Union.

(Exh. 1 – Stoeckert Decl. at ¶ 11-16; Exh. 2 – Gebis Decl. at ¶ 6(c); Exh. 6 – List of Employees with Contribution History; Exh. 7 – Declaration of Kevin Schell.)

d. Unlike the other Funds, for which the collective-bargaining agreements provide that contributions are to be calculated based upon the number of hours an employee actually works in covered employment, the Retirement Savings Fund provides that contributions be calculated based upon the number of hours for which the employee is *paid*. For instance an employee who works four hours of overtime in a week and is paid time and a half for it has effectively been paid for six hours; while the other funds would receive contributions on just four hours, the Retirement Savings Fund receives contributions on six hours. The Original Time Card Report did not account for this distinction between hours paid and hours worked and thus understated the contributions owed to the Retirement Savings Fund. The Revised Time Card Report

4

corrects this omission. (PTX 3 at F-58, Art. VI § (c); PTX 4 at 11; Art. 6 § (c); Exh. 1 – Stoeckert Decl. at ¶ 17-19; Exh. 2 – Gebis Decl. at ¶ 6(d).)

e. Claims for working assessments (also referred to as "union dues") were removed for periods for which an employee had not signed a dues authorization. (Exh. 1 – Stoeckert Decl. at ¶ 20; Exh. 2 – Gebis Decl. at ¶ 6(e); Exh. 8 – List of Employees with Dues Authorizations; Exh. 10 – Declaration of John Manley.)

f. Interest was updated to December 31, 2009. (Exh. 1 – Stoeckert Decl. at ¶ 21; Exh. 2 – Gebis Decl. at ¶ 6(f).)

g. For the ERISA Funds, the 20% liquidated damages set forth in the prior Time Card Report have been changed to "double interest." (Exh. 1 – Stoeckert Decl. at ¶ 22; Exh. 2 – Gebis Decl. at ¶ 6(g).)

h. Audit fees were updated through the date of the report. A more detailed discussion of P&G's fees is set forth below. (Exh. 2 – Gebis Decl. at ¶ 6(h).)

As set forth in the Revised Time Card Report, total additional reportable hours worked after making the foregoing adjustments are now 10,899.5, which represents a reduction of 3,927.5 hours from the Original Time Card Report. (Exh. 1 – Stoeckert Decl. at ¶ 26; Exh. 1 – Gebis Decl. at ¶ 8; Exh. 3 at 1.) Total additional reportable hours paid owed to the Retirement Savings Fund for the period June 1, 1999 through November 30, 2004, are now 8,630.50, which is 431.25 hours more than the number of total additional reportable hours worked during this period. (Exh. 1 – Stoeckert Decl. at ¶ 27; Exh. 2 – Gebis Decl. at ¶ 9; Exh. 3 at 1.) Working assessments dropped from a total of $14,619.54 in the Original Time

Card Report to $5,524.89 in the Revised Time Card Report. (Exh. 1 – Stoeckert Decl. at ¶ 28; Exh. 2 – Gebis Decl. at ¶ 10; Exh. 3 at 1.)

As summarized on the Revised Time Card Report, total contributions and working assessments owed to the Plaintiffs after making all of the changes described above are now $95,613.03, which is a reduction of $37,316.79 from the Original Time Card Report. (Exh. 1 – Stoeckert Decl. at ¶ 29; Exh. 2 – Gebis Decl. at ¶ 11; Exh. 3 at 1.)

### 2. Interest, Liquidated Damages, and "Double Interest"

#### a) The ERISA Funds.

Pursuant to Section 502(g)(2) of ERISA, in the event of a judgment in favor of an ERISA plan, "the court *shall* award the plan" the unpaid contributions, interest thereon, fees, costs, and the greater of an amount equal to the interest on the unpaid contributions or liquidated damages provided for under the plan. 29 U.S.C. § 1132(g)(2), emphasis added. That is, ERISA mandates an award of all of the amounts described in Section 502(g)(2) in the event of a judgment in Plaintiffs' favor. *Central States Pension Fund v. Gerber Truck Serv.*, 870 F.2d 1148, 1156 (7th Cir. 1989). In the present case, the ERISA Funds are entitled to interest in the amount of 1% per month, compounded monthly, on the delinquent contributions, plus the greater of interest on the delinquent contributions or liquidated damages totaling 20% of the delinquent contributions. (Tr. 111-12; PTX 12 at 21; PTX 16 at WP-9; PTX 23 at 3.) In the present case, interest computed at the rate of 1% per month, compounded monthly, as outlined in the Funds' Collection Policy, totals $159,847.96 through December 31, 2009. Defendant therefore owes the ERISA Funds $159,847.96 in interest through November 30, 2009, as well as an additional $157,847.96 in penalty interest pursuant to 29 U.S.C. § 1132(g)(2)(C). (Exh. 1 – Stoeckert Decl. at ¶ 21; Exh. 3 at 1.)

6

### b) Union Dues.

The Labor Management Relations Act, pursuant to which the Court has awarded the Union its unpaid dues, authorizes the Court to award prejudgment interest. *Beelman Truck Co. v. Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 525*, 33 F.3d 886, 892 (7th Cir. 1994). Declining to award prejudgment interest would effectively be to allow Solarcrete to retain some of the benefit of the dues that it withheld from employees' paychecks but never remitted to the Union. Pre-judgment interest is generally awarded at the average prime rate over the period since damages were incurred. *First Nat'l Bank of Chicago v. Standard Bank & Trust*, 172 F.3d 472, 480-81 (7th Cir. 1999). Prejudgment interest should typically be compounded. *American Nat'l Fire Ins. Co. v. Yellow Freight Sys.*, 325 F.3d 924, 938 n.11 (7th Cir. 2003) ("at least in a federal question case, a district court must explain why it believes it appropriate to deviate from the norm of compound interest, the measure that most completely fulfills the purpose of prejudgment interest of ensuring 'complete compensation'"). In the present case, the average prime rate over the period May 1997 to the present is 6.5%. (Exh. 1 – Stoeckert Decl. at ¶ 24-26.) P&G computed pre-judgment interest on the Union's dues claim at this rate, compounded monthly. (Exh. 1 – Stoeckert Decl. at ¶ 24-26; Exh. 2 - Gebis Decl. at ¶ 7.) Total prejudgment interest at 6.5%, compounded monthly, on RG's unpaid union dues is $5,522.89. (Exh. 1 – Stoeckert Decl. at ¶ 26.)

### c) The Non-ERISA Funds.

While the CBAs require contributions to the Chicago Plastering Institute ("CPI") and Chicagoland Safety Council ("CEA") (collectively, the "non-ERISA Funds"), they are not governed by ERISA. (Opinion at 2.) However, Defendant is nonetheless bound by the Trust Agreements creating the Funds, as it acknowledged in signing contribution reports submit-

ted to the Funds throughout much of the Audit Period. (Tr. at 155, 166, 237; PTX 17 at WP-2069 – WP-2083, WP-2089 – WP-2093.) The Funds' Trust Agreements and Collection Policy require delinquent employers to pay interest and liquidated damages of 20% on all delinquent contributions. (PTX 7; PTX 16 at WP-9.) Thus, pursuant to Section 301, the non-ERISA Funds are entitled to interest on the delinquent contributions at the rate of 1% per month, compounded monthly, as outlined in the Collection Policy, and to liquidated damages in the amount of twenty percent of the delinquent contributions. (Tr. 111-12; PTX 12 at 21; PTX 16 at WP-9.) Liquidated damages of twenty percent of the contributions owed to the CPI and the CEA total $893.76, and interest through July 31, 2009, to the Funds at 1% per month, compounded monthly, totals $9,059.38 ($8,838.15 to the CPI, and $221.23 to the CEA). (Exh. 1 – Stoeckert Decl. at ¶ 23; Exh. 3 – Report at 1.)

3. **Audit Fees**

This Court has already ordered Solarcrete to pay any additional audit fees incurred as a result of its belated disclosure of its employees' time cards on the first day of trial. (Opinion at 16.) Those include all fees charged by the Funds' auditors in connection with reviewing and analyzing the time cards, producing the time card report, and testifying at the final day of trial. These fees total $17,225.00. (Exh. 2 – Gebis Decl. at ¶ 28.)

Additionally, Section 502(g)(2) of ERISA provides for an award of reasonable audit fees. 29 U.S.C. § 1132(g)(2). Section 532(g)(2)(E) authorizes the Court to award "such other legal or equitable relief as the court deems appropriate" in the event of a judgment in favor of a plan, and courts have interpreted this section to authorize an award of reasonable auditors' fees. 29 U.S.C. § 1132(g)(2)(E); *Moriarty ex rel. Local Union No. 727, I.B.T. Pension Trust v. Svec*, 429 F.3d 710, 721 (7th Cir. 2005), citing *Operating Eng'rs Pension Trust v. A-C Co.*, 859

F.2d 1336, 1343 (9th Cir. 1988); *Chicago District Council of Carpenters Pension Fund v. Sciortino Contractors*, 934 F. Supp. 277, 279 (N.D. Ill. 1996) (awarding $1,449.90 in audit fees on $11.46 in delinquent contributions). In the present case, the time expended (and therefore fees incurred) by the Funds' auditors, Piotrowski & Gebis ("P&G"), was essential to Plaintiffs' discovery of and proof of the delinquent contributions to which they were entitled, and Plaintiffs are not made whole without reimbursement of those fees.

The auditors incurred $48,025.00 in fees and expenses for 490.25 hours spent in connection with this matter, which fees were reasonably and necessarily incurred in light of the nature of the case. The auditors charge by the hour for their services, (Exh. 2 – Gebis Decl. at ¶ 14-22), and thus there are two components to the reasonableness of their fee: the reasonableness of the hourly rate charged, and the reasonableness of the number of hours spent in the engagement. In the circumstances of the present case, both P&G's hourly rate and the amount of time the firm incurred were reasonable.

First, P&G's hourly rates are reasonable. The rates P&G charged are set forth in summary form, together with the corresponding auditors' educational background and work experience, below:

| Auditor | Background | Rate Bef. 1/06 | 1/06 to 12/08 | Aft. 12/08 |
|---|---|---|---|---|
| Gary Gebis, Partner | BBA in Public Accounting, Loyola, 1973; 30+ years in payroll audits | $80 $125-200* | $100 $125-250* | $120 $160-250* |
| William Piotrowski, partner | BS in Accounting, DePaul, 1980; 20+ years in payroll audits | $80 | $100 | $120 |
| John Stoeckert, staff accountant | BS in Accounting, UI, 1964; 39 years CPA; 5+ years in payroll audits | | | $90 |
| Mary Kedzie, staff accountant | BS in Accounting, UIC, 1982; 4 years in payroll audits | $62.50 | $75 | |
| Carl Bendlin, as staff accountant | BA in Acctg. & Bus. Mgmt., Concordia, 1994; 5 years in payroll audits | $62.50 | $75 | $90 |

9

| Auditor | Background | Rate Bef. 1/06 | 1/06 to 12/08 | Aft. 12/08 |
|---|---|---|---|---|
| Carl Bendlin, as office administrator | | $40 | $40 | $50 |
| Teri McMillan, office administrator | | | $40 | |
| Hermansen, Office administrator | | | $40 | |
| Haddrill, Office administrator | | | $40 | |

*Fee for tasks beyond routine work on the audit, such as depositions and preparing for and testifying at trial.

(Exh. 1 – Gebis Decl. at ¶ 14-22.) The overall average billing rate for this matter—that is, the total audit fees billed divided by the total number of hours billed by P&G—is $48,085.00 ÷ 490.25 hours = $97.96 per hour. P&G's hourly rates are patently reasonable, particularly in light of Gebis' and Stoeckert's considerable experience.

At the same time, the 490.25 hours spent by the auditors are reasonable in light of the circumstances of the instant case. P&G's billing records show the number of hours its auditors spent in each phase of the audit process. (Exh. 3 – Gebis Decl. at ¶ 18-22; Exh. 4 – Stoeckert Decl. at ¶ 10; Exh. 10 – Billing Record Summary[2].) An examination of the time spent by the auditors in each of these categories of time, particularly in light of the manner in which the instant case unfolded, shows that the hours spent by the auditors were reasonable. (Exh. 6.)

The audit in this case was neither straightforward nor simple. Due to the paucity of records available, the auditors were forced to devise and implement alternative methods of estimating Defendant's compliance with its contribution obligations. (Tr. at 82-89, 99-106.) Moreover, the Defendant's approach to the audit needlessly lengthened and complicated the

---

[2] The underlying billing records summarized on this spreadsheet are available to opposing counsel (or the Court) upon request.

completion of P&G's findings. Defendant initially refused to allow any access to its records, requiring not only the initiation of the instant litigation, but the issuance of a default order (some three months after Defendant had already appeared through counsel in the case) and the bringing of a motion for rule to show cause before any records were produced. (Docket nos. 1, 8, 12, 16.) Then it took many additional months before Defendant finally produced sufficient records to permit the issuance of the Audit Report on January 31, 2007. (PTX 16.) The fact that these efforts by P&G, in addition to Gebis' preparation for and testifying at trial in October 2007, did not yield the measure of damages ultimately relied upon by the Court does not make those efforts unreasonable. On the contrary, it is only the Defendant's initial failure to produce all of the relevant documents in its possession that ultimately led to the necessity of the auditors creating a second report; denying the auditors their fees for work done on the initial report would effectively be to negate the discovery sanction awarded by the Court on January 15, 2009. (Docket no. 73.)

In sum, while the auditors' fees incurred in this case are perhaps larger than in more routine cases, they are not disproportionate to the audit findings and reflect a number of factors not in Plaintiffs' control, from Defendant's refusal to allow access to records, failure to maintain adequate records to permit a straightforward calculation of Defendant's liability, and piecemeal provision of additional records. In light of all of these factors, the number of hours spent by P&G in connection with the instant case as reflected in P&G's billing records was entirely reasonable. Plaintiffs should be awarded their reasonable audit costs in connection with this matter, totaling **$48,025.00**.

## CONCLUSION

In sum, Plaintiffs' damages in this matter are as follow:

| | |
|---|---:|
| Delinquent contributions and dues | $ 95,613.03 |
| Interest on all delinquent contributions | 168,907.34 |
| Double interest on delinquencies to ERISA funds | 159,847.96 |
| Liquidated damages on delinquencies to non-ERISA funds | 893.76 |
| Pre-judgment interest on dues | 5,522.89 |
| Auditors fees | 48,025.00 |
| Total | $478,809.98 |

Plaintiffs respectfully request entry of judgment in their favor and against Defendant in the amount of **$478,809.98**, plus their reasonable attorneys' fees and costs, to be petitioned for pursuant to the schedule set forth in the District Court's local rules following the entry of judgment. The present uncertainty of the amount of those attorneys' fees and costs does not prevent this Court from entering a final, enforceable judgment in this matter. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202-03 (1999).

Respectfully submitted,

s/ David Huffman-Gottschling
One of Plaintiffs' attorneys

David Huffman-Gottschling
Jacobs, Burns, Orlove, Stanton and Hernandez
122 S. Michigan Ave., Ste. 1720
Chicago, Illinois 60603
(312) 372-1646

### CERTIFICATE OF SERVICE

I, David Huffman-Gottschling, an attorney, certify that I caused a copy of the foregoing document to be served electronically upon the following persons by filing it using the ECF system on November 16, 2009:

Howard Marks
Berger, Newmark and Fenchel P.C.
303 W. Madison St., 23rd Fl.
Chicago, IL 60606

s/ David Huffman-Gottschling
David Huffman-Gottschling